**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

STEVEN FRANKLIN HUGHES, JR.,

      Petitioner,

v.

                                       Case No. 3:22-cv-1421-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

      Respondent.

---

**ORDER**

**I.    Status**

Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. Doc. 1. He is challenging two 2014 state court (Duval County, Florida) judgments of conviction for aggravated battery and armed robbery, for which he is serving consecutive sentences of ten and thirty years imprisonment, respectively, after entering pleas of guilty. Respondent has responded. See Doc. 5; Resp.[1]

---

[1] Attached to the Response are several exhibits. See Docs. 5-1 to 5-8. The Court cites the exhibits as "Resp. Ex." and will document page numbers assigned by the Court's electronic docketing system.

Petitioner replied. <u>See</u> Doc. 9. This case is ripe for review.[2]

## II.     <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>,

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could

3

> disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate

4

review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope</u>

<u>v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the

state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies

results in a procedural default which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of

procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine

5

of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome,

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).

[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

6

> 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir.

---

[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

7

2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied

8

to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision-n denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't

9

of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.   Relevant Procedural History

On March 5, 2014, Petitioner entered open pleas of guilty to aggravated battery and armed robbery in front of the Honorable Suzanne Bass.[6] Resp. Ex. A at 14-15, 23-24. Before accepting the pleas, Judge Bass conducted a plea colloquy with Petitioner and then continued the case for sentencing. Id. at 57-74. During that colloquy, defense counsel and the trial court informed Petitioner that he was subject to a ten-year minimum mandatory and a maximum fifteen-year term of incarceration for aggravated battery and a ten-year minimum mandatory and a maximum term of life incarceration for armed robbery. Id. at 59-60, 61, 62-64. They also advised Petitioner that the minimum mandatory terms were required to run consecutive. Id. at 60, 64-65. Petitioner confirmed that no one promised him anything in return for his guilty pleas and that the sentences imposed would be determined by the trial court. Id. at 65-66. Petitioner further confirmed he forfeited certain constitutional rights by entering his pleas. Id. at 67-68.

On June 24, 2014, the Honorable Russell L. Healey conducted Petitioner's

---

[6] Though the pleas were entered at the same time, the charges were initiated in separate cases, Case No. 2013-CF-7543 (aggravated battery) and 2013-CF-8147 (armed robbery).

sentencing hearing. Id. at 32-56. At the sentencing hearing, defense counsel and the state informed the trial court that they agreed to imposing the minimum mandatory terms to run concurrently. Id. at 35-39. The trial court then sentenced Petitioner to a ten-year term of incarceration with a ten-year minimum mandatory on the aggravated battery conviction and a thirty-year term of incarceration with a ten-year minimum mandatory on the armed robbery conviction. Id. at 16-22, 25-31, 54. The trial court also ordered the sentences to run consecutively, but ordered the minimum mandatories to run concurrently pursuant to the parties' agreement. Id. at 55.

After sentencing, Petitioner filed a pro se motion to withdraw his pleas under Florida Rule of Criminal Procedure 3.170(l), asserting his pleas were involuntary because: (1) trial counsel promised Petitioner that he would receive concurrent sentences not exceeding the minimum mandatories; (2) trial counsel told him the trial court agreed to sentence Petitioner to no more than fifteen years on each conviction; (3) the trial court erred in failing to determine whether Petitioner had any plea offers or whether he was promised anything for his pleas; and (4) the trial court should have known that Petitioner could not fully understand or comprehend the laws due to his lack of education. Id. at 4-7. The trial court summarily denied the motion. Id. at 9-13. Petitioner, with help from appellate counsel, then sought a direct appeal. Id. at 76-77. He filed an initial brief arguing the trial court erred in summarily denying the motion to withdraw

11

his pleas without first appointing conflict-free counsel. Resp. Ex. B. The state filed an answer brief. Resp. Ex. C. The First District Court of Appeal per curiam affirmed the trial court's decision without a written opinion. Resp. Ex. D.

On January 11, 2013, Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Resp. Ex. E at 5-14, 20-27. In his Rule 3.850 motion, Petitioner raised four grounds, arguing: (1) counsel was ineffective for failing to file a motion to dismiss; (2) counsel was ineffective for failing to file a motion to suppress Petitioner's confession; (3) counsel was ineffective for  coercing Petitioner to enter guilty pleas, rendering the pleas involuntary; and (4) counsel was ineffective for misadvising him on the legal aspects of Petitioner's case, rendering his pleas involuntary. Id. After conducting an evidentiary hearing on ground four, the trial court denied the Rule 3.850 motion. Id. at 28-36. Petitioner appealed. Id. at 110-11. With the help of appellate counsel, Petitioner filed an initial brief arguing only that the trial court erred in summarily denying ground three of the Rule 3.850 motion. Resp. Ex. F. The state filed an answer brief. Resp. Ex. G. The First DCA per curiam affirmed the trial court's decision without a written opinion. Resp. Ex. H.

12

## III.   The Petition

### A. Ground One

Petitioner argues his pleas were involuntary. Doc. 1 at 6-14. Specifically, Petitioner suggests the trial court, at sentencing, failed to ascertain whether his pleas were still knowingly and voluntarily entered after defense counsel and the state informed the trial court of an agreement to run the minimum mandatories concurrently after Petitioner originally made open pleas to the trial court. Id. at 10-11.[7]

Respondent states that Petitioner raised the "general" allegations of this Ground in ground three of his Rule 3.850 motion but argues this claim is unexhausted because, "Petitioner has expanded on his original claim now contending that counsel should have objected because the court failed to conduct another plea colloquy because the discussions between the state and the defense transformed the open plea before the court to a negotiated plea agreement." Resp. at 14.

However, in his Petition, Petitioner does not expand his claim to suggest

---

[7] In his Reply, Petitioner seems to make a new argument not raised in his Petition – that the trial court violated his due process rights because the sentencing judge did not comply with Florida Rule of Criminal Procedure 3.700. Doc. 9 at 2. As Petitioner improperly raised the argument for the first time in his Reply the Court does not address this argument. See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'" (citing United States v. Coy, 19 F.3d 629, 632 n.7 (11th Cir. 1994))).

13

trial counsel was deficient for failing to object, but instead continues to center the claim on the voluntariness of his pleas due to the sentencing court's failure to engage in another plea colloquy.[8] As such, the Court finds Petitioner exhausted this claim within ground three of his Rule 3.850 motion. Resp. Ex. E at 10-11, 24. The trial court denied this ground, stating:

> Defendant alleges counsel was ineffective for failing to apply the law, exert every skill, and act diligently for Defendant. First, Defendant contends counsel coerced him by telling Defendant that if he entered an open plea of guilty, the State would "run the two minimum/mandatory sentences concurrent." According to Defendant, counsel told him this with the knowledge that this would be an illegal sentence. First, no court has determined that Defendant's sentence is illegal. Second, section 775.087(2)(d) "contemplates two distinct imprisonment terms: a term imposed for a qualifying felony . . . and a term imposed for a non-qualifying felony.["] Williams v. State, 186 So. 3d 989, 992 (Fla. 2016). According to Williams:
>
> > The last sentence of paragraph (2)(d) further delineates the manner in which these distinct imprisonment terms are to be served in relation to one another. Specifically, it expressly mandates only that a qualifying felony sentence run "consecutively to" any sentence imposed

---

[8] The Court does note the inconsistency of Petitioner's allegations. In his Rule 3.850 motion he alleged that his plea was involuntary because counsel "coerced" him to plea by informing him the minimum mandatory sentences would run concurrently if he pled. But in his Petition, Petitioner now states his plea was involuntary because there was no such agreement prior to the entrance of his pleas, and because it arose after his plea, the sentencing judge should have conducted a second plea colloquy to ensure his voluntariness. Nevertheless, due to the similarities of these underlying allegations, the Court finds this claim exhausted.

> for a non-qualifying felony. *Nothing in paragraph (2)(d)'s plain language also requires, as the State posits, a qualifying felony sentence to run consecutively to another qualifying felony sentence.*

Id. (emphasis added).

Defendant's claim is unfounded because Aggravated Battery and Armed Robbery are qualifying offenses. See 775.087(2)(a), Fla. Stat. (2013). As such, according to Williams, there is nothing in the statute that requires the Court to impose consecutive minimum mandatory sentences in Defendant's cases.

Next, Defendant maintains his plea was involuntary because he entered his plea in front of one judge and another judge presided over his sentencing.[9] Defendant states counsel coerced him by stating the judge to whom Defendant pleaded guilty "is known to be more lenient . . . ." According to Defendant, the sentencing judge improperly failed to ensure Defendant's plea was voluntary. "Before accepting a plea of guilty or nolo contendere, the trial judge shall determine that the plea is voluntarily entered . . . ." Fla. R. Crim. P. 3.172(a) (emphasis added).

Here, Defendant directs his complaint at what the sentencing judge did not do. The original judge properly questioned Defendant when Defendant entered his plea and found the plea to be voluntarily entered. There is no authority to support Defendant's contention that the sentencing judge should have done a colloquy to determine whether Defendant's guilty plea was voluntary. Defendant ha[d] already entered his plea by that time. Consequently, there was no reason for counsel to object. Defendant is not entitled

---

[9] The sentencing judge rotated into this division according to standard Fourth Circuit procedures.

to relief on Ground Three.

Resp. Ex. E at 32-33 (record citations omitted, footnote in original but renumbered herein). The First DCA per curiam affirmed the trial court's denial without a written opinion (Resp. Ex. M).

The Court thus addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'" Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting Frank v. Blackburn, 646 F.2d 873, 882 (5th Cir. 1980)). As the trial court noted, the trial judge who accepted Petitioner's pleas conducted a colloquy to ensure his pleas were knowingly and voluntarily entered, and there is no legal reason to require the sentencing judge to perform a second colloquy. Indeed, a review of the plea colloquy demonstrates Petitioner's voluntariness and knowledge of the consequences of his pleas. See Resp. Ex. A at 57-74. Considering this record evidence, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts given the

16

evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground One is denied.

**B. Ground Two**

Petitioner asserts that the trial court erred in failing to appoint him conflict-free counsel to represent him during its consideration of his pro se motion to withdraw plea; thus, violating his right to counsel under the Sixth and Fourteenth Amendments. Doc. 1 at 15-20.

As previously stated, Petitioner filed post-sentencing motion to withdraw his pleas. Resp. Ex. A at 4-7. The trial court summarily denied the motion, finding his allegations were conclusively refuted by the record. Resp. Ex. A at 9-13. Petitioner, with help from appellate counsel, raised this issue on direct appeal. Resp. Ex. B. And the First DCA per curiam denied this claim and affirmed his convictions and sentences without a written opinion. Resp. Ex. D.

To the extent that the First DCA decided the claim on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts considering the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to

17

relief based on this claim.

To the extent that the state court's adjudication of the claim is not entitled to deference, Petitioner's claim is still without merit. In Florida, a trial court is not required to appoint conflict-free counsel in Rule 3.170(l) proceedings unless an adversarial relationship exists, <u>and</u> an evidentiary hearing is required. <u>Flemming v. State</u>, 204 So. 3d 950, 952 (Fla. 1st DCA 2016). Accordingly, if the record conclusively refutes the allegations raised in the Rule 3.170(l) motion, then a trial court need not appoint conflict-free counsel. Therefore, because the trial court found that the record conclusively refuted Petitioner's motion, it did not err in failing to appoint Petitioner conflict-free counsel. Ground Two is denied.

**C. Ground Three**

Petitioner argues his trial attorney was ineffective for failing to advise him that he could move to withdraw his plea prior to sentencing. Doc. 1 at 21-23. Specifically, Petitioner asserts that he entered his pleas before Judge Bass "who was known to be a lenient sentencing judge" and whom counsel informed him would not impose a sentence greater than the two consecutive minimum mandatory sentences. <u>Id.</u> at 22. Petitioner states that when he learned the case had been transferred to a different judge for sentencing, Petitioner expressed concern but trial counsel incorrectly informed him there was no recourse since the plea had already been entered. <u>Id.</u> at 22-23. Petitioner suggests he would

18

have withdrawn his plea, and "could have successfully negotiated with the [s]tate for a favorable plea deal" or go to trial and either be acquitted or convicted of a lesser included offense. Petitioner acknowledges he did not raise this ground with the state court but asks that the Court overlook the procedural bar under the purviews of Martinez v. Ryan, 566 U.S. 1 (2012).

Under Martinez, Petitioner must demonstrate more than the general assertion that the trial court did not appoint counsel in the initial-review collateral proceeding. 566 U.S. at 14. Petitioner must "also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. (citations omitted); see also Lambrix v. Sec'y Fla. Dept. of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). Conversely, a claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." Id. at 16. For the reasons that follow, the Court finds that even if Petitioner demonstrates that his lack of postconviction counsel caused his procedural default, he cannot demonstrate that his underlying ineffective assistance of counsel claim is substantial to overcome his lack of exhaustion under Martinez.

Under Florida law, prior to sentencing, "[t]he court may in its discretion, and shall on good cause . . . permit a plea of guilty or no contest to be withdrawn." Fla. R. Crim. P. 3.170(f). Good cause to withdraw a plea exists under Florida law whenever "the plea is infected by misapprehension, undue

19

persuasion, ignorance, or was entered by one not competent to know its consequence or that it was otherwise involuntary, or that the ends of justice would be served by withdrawal of such plea." Johnson v. State, 947 So. 2d 1208, 1210 (Fla. 5th DCA 2007) (quotation marks and citation omitted).

Here, assuming *arguendo* that trial counsel did in fact misadvise Petitioner that there was no recourse after a new judge was assigned to his case for sentencing and never informed him of the option to withdraw his plea before sentencing, Petitioner cannot show prejudice. Petitioner's assertions that he believed he would have a more lenient sentence from the judge who accepted his pleas does not show "good cause" which would require a judge to grant a Rule 3.170(f) motion. Additionally, even if such a motion was filed and granted, Petitioner's assertions that he "could have successfully negotiated with the [s]tate for a favorable plea deal" or go to trial and either be acquitted or convicted of a lesser included offense are wholly speculative and cannot warrant relief. It is difficult to show prejudice beyond mere speculation as to any potential plea deal where, as here, "plea negotiations never advanced to any level of specificity." Cook v. United States, 613 F. App'x 860, 866 (11th Cir. 2015);[10] see also Osley v. United States, 751 F.3d 1214, 1225 (11th Cir. 2014)

---

[10] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060–61 (11th

("The lack of definition in the plea offer makes it substantially harder to determine it likely that a plea acceptable to [the defendant] would have been entered without the prosecution canceling it or the trial court refusing to accept it." (quoting Merzbacher v. Shearin, 706 F.3d 356, 370 (4th Cir. 2013) (brackets and emphasis removed))). Moreover, Petitioner's assertion that he, alternatively, would have been acquitted or convicted of a lesser included offense is pure speculation and conjecture. Indeed, at the evidentiary hearing on Petitioner's Rule 3.850 motion, trial counsel testified that he reviewed the evidence in Petitioner's case, found the evidence (including Petitioner's DNA being found inside of the ATM that was broken and money stolen from at the robbery) highly incriminating, and "considered any sentence less than life to be a victory for [Petitioner]." Resp. Ex. E at 125-26, 130-31, 136-37. As such, Petitioner has failed to satisfy the requirements of Martinez, and this Ground is unexhausted and procedurally defaulted. Likewise, Petitioner fails to allege actual innocence or a manifest injustice. Ground Three is due to be denied.

### D. Ground Four

Petitioner contends his trial counsel was ineffective for failing to file a motion to dismiss based on Florida's Stand Your Ground statute. Doc. 1 at 20. Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. E at 8-9, 22-23.

---

Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

21

The trial court denied relief, stating:

> Defendant claims counsel was ineffective for failing to file a motion to dismiss in light of his allegation that he had a "Stand Your Ground" defense in his Aggravated Battery case based on justifiable use of force. Furthermore, Defendant asserts "had defense counsel filed the motion to dismiss the [Aggravated Battery case], there would be no [Armed Robbery case]."[11]
>
> When a defendant claims immunity pursuant to 776.032, Florida Statutes, the trial court must conduct a pretrial evidentiary hearing at which the defendant must demonstrate by a preponderance of the evidence that he or she is immunized from prosecution. Dennis v. State, 51 So. 3d 456, 462-63 (Fla. 2010). It is not enough for the court to deny a motion to dismiss based on section 776.032 because there are disputed facts.
>
> Section 776.013, Florida Statutes (2013)[,] sets out when a person protecting his or her home is justified to use deadly force. A person is not presumed to "have held a reasonable fear of imminent period of death or great bodily harm to himself or another" when "[t]he person against whom defensive force is used has the right to be in . . . the dwelling, residence, or vehicle . . . ." § 776.013(2)(a), Fla. Stat. (2013).
>
> According to Defendant's Arrest and Booking Report for Aggravated Battery in Case No. 7543, the victim told police Defendant and another suspect approached the victim while he was in the driveway of a residence where Defendant lived. The victim explained that he was helping a friend remove personal belongings from that residence where she lived. The victim told the officers the other suspect approached the victim with a hammer and pulled the victim out of his vehicle, and Defendant aimed a shotgun at him, telling the victim

---

[11] Defendant incorrectly designates Case No. 7543 as "Count I" and Case No. 8147 as "Court II."

22

he was going to shoot him. Defendant and the other suspect "fought with [the victim] outside the vehicle and around the front yard with [the other suspect] continually striking [the victim] on his head and body with the hammer." Defendant "also hit the victim in the lower back several times with the butt of the shotgun . . . ." Defendant suffered only a laceration to his finger and neck pain.

Defendant maintains his attack on the victim was justified. Defendant describes the events in the Motion.

> [D]efendant pulled into his driveway of his residence and found the so-called victim . . . loading stolen property into his vehicle, property that belonged to defendant and was in his place of residence. Where [the victim] had unlawfully entered [and] removed said property. Defendant's property could be clearly seen in the back of [the victim's] vehicle.

Defendant's presentation of facts does not justify his use of deadly force against the victim. Defendant could not reasonably believe he was in "imminent fear of death or great bodily harm" when he was the aggressor and the victim took no steps to harm Defendant. Given Defendant's account of the facts, he is unable to show a meaningful factual dispute.

On March 29, 2017, the Court conducted an evidentiary hearing on Ground Four of the instant Motion. At the hearing, however, Defendant questioned his trial counsel, Philip A. Bavington, about counsel's decision not to pursue a Stand Your Ground defense. According to Bavington, after reviewing the facts and the depositions, it was clear to him a Stand Your Ground defense was not appropriate.

At an evidentiary hearing, a defendant has the burden to prove a claim of ineffective assistance of counsel.

23

> Pennington v. State, 34 So. 3d 151, 154 (Fla. 1st DCA 2010). Once the defendant presents evidence to support his claim, the state must present contradictory evidence. Id. at 154-55. Then, "it is within the province of the trier of fact to assess the credibility of witnesses, and upon the testimony found by it to be worthy of belief and reject such testimony found by it to be untrue." Bussell v. State, 66 So. 3d 1059, 1062 (Fla. 1st DCA 2011). The Court finds Bavington's testimony more credible than Defendant's allegations and testimony. Defendant is not entitled to relief on Ground One.

Id. at 29-31 (footnote in original but renumbered and record citations omitted).

While Petitioner, with help from counsel, filed an appeal following the trial court's denial of his Rule 3.850 motion, his counseled initial brief only contesting the trial court's summary denial of ground three of his motion, asserting no arguments regarding the trial court's denial of this claim. See Resp. Ex. F. Florida Rule of Appellate Procedure 9.141 requires a petitioner to file an appellate brief if he received an evidentiary hearing on one or more claims. Fla. R. App. P. 9.141(b)(3)(C) (requiring the filing of an initial brief after the grant or denial of a Rule 3.850 motion if an evidentiary hearing was held on one or more claims). If a specific issue is not included in the required appellate brief, that issue is considered abandoned on appeal. Atwater v. Crosby, 451 F.3d 799, 809-10 (11th Cir. 2006) ("Pursuant to state procedural rules, abandonment of an issue results from submission of a brief without argument thereon in an appeal of an order denying relief after an evidentiary hearing." (citing Shere v.

24

State, 742 So. 2d 215, 217 n.6 (Fla. 1999)); see also Cortes v. Gladish, 216 F. App'x. 897, 899-900 (11th Cir. 2007) (recognizing that if the petitioner "received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver").

Here, since Petitioner received an evidentiary hearing on his Rule 3.850 motion, his appellate brief needed to address each claim he wanted the appellate court to review. Petitioner did not brief this claim, electing to brief only the issues raised in ground three of his Rule 3.850 motion. Petitioner's failure to fully brief this issue constituted a waiver of the allegations here. Thus, Petitioner has failed to exhaust this claim. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); see also Nieves v. Sec'y, Fla. Dep't of Corr., 770 F. App'x 520, 521 (11th Cir. 2019) ("In Florida, exhaustion usually requires not only the filing of a [Rule] 3.850 motion, but an appeal from its denial.") (quoting Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979)); LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d 1237, 1260-61 (11th Cir. 2005) ("We also conclude that the defendant failed to properly exhaust this issue when he failed to raise it . . . in his appeal of the State 3.850 Court's decision.").

In his Reply, Petitioner states his counsel's failure to raise this issue in

25

the postconviction appeal is "cause" to excuse the bar under <u>Martinez</u>. But the limited exception in <u>Martinez</u> applies only "where (1) a state requires a prisoner to raise ineffective-trial-counsel claims at an initial-review collateral proceeding; (2) <u>the prisoner failed properly to raise ineffective-trial-counsel claims in his state initial-review collateral proceedings</u>; (3) the prisoner did not have collateral counsel or his counsel was ineffective; and (4) failing to excuse the prisoner's procedural default would cause the prisoner to lose a 'substantial' ineffective-trial-counsel claim." <u>Lambrix v. Sec'y, Dep't of Corr.</u>, 756 F.3d 1246, 1260 (11th Cir. 2014) (emphasis added). Importantly, <u>Martinez</u> "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings . . . ." <u>Id.</u> (citation omitted). Here, Petitioner's claim is defaulted because although he raised the claim in his pro se Rule 3.850 Motion, his counsel did not raise the claim in his 3.850 appeal. And "the Supreme Court has explicitly held that attorney errors made in appeals from initial-review collateral proceedings do not constitute cause excusing a procedural default." <u>Baker v. Dep't of Corr., Sec'y</u>, 634 F. App'x 689, 694 (11th Cir. 2015). Thus, <u>Martinez</u> does not apply. Likewise, Petitioner does not otherwise argue other forms of cause and prejudice from the procedural default, nor does he assert that a fundamental miscarriage of justice will result if this claim is not addressed on the merits. Thus, this claim is unexhausted and Ground Four is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.      If Petitioner appeals the dismissal of this case, the Court denies a certificate of appealability.[12] Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of January, 2026.



TIMOTHY J. CORRIGAN
Senior United States District Judge

---

[12] The Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, the Court will deny a certificate of appealability.

JaxP-12

C:    Steven Franklin Hughes, Jr., #J52421
      Counsel of record